**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TERRY JOE LEE CAMPOS,

     Defendant-Appellant

No. 99-5050

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 98-CR-75-C)

Scott Troy, Tulsa, Oklahoma, for Defendant-Appellant.

Neal Kirkpatrick, Assistant United States Attorney (Stephen C. Lewis, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **TACHA** , **McKAY** , and **HENRY** , Circuit Judges,

**HENRY** , Circuit Judge.

     Terry Joe Lee Campos appeals his conviction following a jury trial for transporting child pornography through interstate commerce via computer, a violation of 18 U.S.C. § 2252(a)(1). Mr. Campos argues that: (1) the search of

his residence violated the Fourth Amendment, because the warrant purporting to authorize it was overbroad; (2) the district court erred in allowing the jury to view the two photographs that he allegedly transported because he had stipulated that they constituted child pornography; (3) pursuant to Fed. R. Evid. 404(b), testimony regarding the meaning of a screen name registered to his on-line account should not have been admitted; (4) the evidence was insufficient to support his conviction. For the reasons set forth below, we reject Mr. Campos's arguments and affirm his conviction.

## I. BACKGROUND

The government alleged that Mr. Campos transmitted two photographs constituting child pornography from his home in Broken Arrow, Oklahoma, to a resident of Aurora, Illinois (hereafter "the complainant"). The complainant testified at trial that, on the evening of April 16-17, 1997, he participated in a gay and lesbian chat room on America Online (AOL). While in the chat room, he exchanged messages and photographs with several people, including another AOL subscriber who used the screen name "IAMZEUS." After spending two hours in the chat room, the complainant signed off AOL and went to bed.

When he awoke at approximately 4:00 a.m. on April 17, the complainant signed onto AOL again. He discovered that IAMZEUS had sent him electronic

2

mail, including several images of adult male men, and two images of children engaged in sexually explicit conduct. The complainant copied the images of the child pornography to a floppy disk, notified the Federal Bureau of Investigation (FBI), and gave the disk to the special agent who interviewed him.

Law enforcement agents determined that the AOL subscriber who used the name "IAMZEUS" was Mr. Campos, a resident of Broken Arrow, Oklahoma. Based on this information, the FBI obtained a warrant to search Mr. Campos's home and computer. On October 1, 1997, the agents conducted a search of the Broken Arrow residence occupied by Mr. Campos and Lester Hibbs. They discovered a computer in a back room of the house and seized it. In examining the hard drive of the computer, the agents found the two images that had been transmitted to the complainant, six similar images of children engaging in sexually explicit conduct, and a copy of a newspaper article describing the conviction and sentencing of a defendant in Wisconsin federal court for possessing and transporting child pornography. Prior to trial, Mr. Campos filed a motion to suppress the evidence obtained from the search, but the district court denied the motion.

During the trial, the government presented several witnesses to bolster its contention that it was Mr. Campos who had sent the pornographic images to the complainant. Alissa Simon, an employee with AOL, testified that the credit card

3

on the AOL account belonged to Mr. Campos and that Mr. Campos' account was terminated by AOL for transferring illegal pictures that violated the terms of service. An FBI agent who had spoken with Mr. Campos during the search of his residence reported that Mr. Campos had given an explanation of the AOL account that was inconsistent with the information provided by Ms. Simon. According to the agent, Mr. Campos had said that the computer belonged to Lester Hibbs and that Mr. Hibbs had paid for the AOL account with Mr. Hibbs's credit card.

Gary Szabo, a document examiner with the Tulsa Police Department, testified that he examined two documents found in Mr. Campos's residence. One of the documents contained the notation "13Bysk," which resembled the name of one of the pornographic files described in the indictment. Mr. Szabo also testified that, based upon his comparison of the notation with exemplars provided by Mr. Campos, Mr. Campos probably wrote the notation.

Additionally, the government offered testimony from Donald Rehman, a retired state law enforcement agent with experience in investigating computer crime involving child pornography. Mr. Rehman testified about the meaning of the screen name "Chicken Hawk," which resembled one of the screen names assigned to Mr. Campos's AOL account ("ChknHawk15"). See Aplt's App. at 271-74.

In response to the government's allegations, Mr. Campos presented

4

testimony from three friends and his mother. Mr. Campos's friends testified that Mr. Hibbs had told them that the pornographic photographs in question were his, not Mr. Campos's. According to Ms Campos's mother, Mr. Hibbs told her, "Terry is not the one that did it, that he [Mr. Hibbs] did it." Id. at 311.

After hearing all the evidence, the jury convicted Mr. Campos. The district court sentenced him to thirty-seven months' imprisonment.

## II. DISCUSSION

### A. Computer Search

Mr. Campos first argues that the district court erred in denying his motion to suppress the evidence obtained from the search of his residence. According to Mr. Campos, the law enforcement agents who sought the warrant had grounds to search only for the two images that had been sent to the complainant by IAMZEUS. He, therefore, maintains that the warrant authorizing agents to search for other evidence of child pornography was overly broad and that therefore violated the Fourth Amendment. We review de novo the district court's legal conclusion regarding the sufficiency of the warrant. See United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998). [1]

---

[1] In response to Mr. Campos' argument, the government first contends that Mr. Campos failed to preserve the issue for appellate review. The government's argument is based on the fact that Mr. Campos did not present any evidence in support of his motion to suppress and that he did not object to the government's evidence at trial on Fourth Amendment grounds.

"The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." United States v. Carey, 172 F.3d 1268, 1271 (10th Cir. 1999). It was adopted in response to the evils of general warrants—those that allow such exploratory rummaging. See O'Rourke v. City of Norman, 875 F.2d 1465, 1472-73 (10th Cir. 1989).

Upon review of the record, we are not convinced that the warrant was overly broad. Rather than authorizing an unfocused inspection of all of Mr. Campos's property, the warrant was directed at items relating to child pornography. It authorized the agents to seize computer equipment "which may be, or [is] used to visually depict child pornography, child erotica, information pertaining to the sexual activity with children or the distribution, possession, or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica." Aplt's App. at 27. It also authorized the

We are not persuaded by the government's argument. Although Mr. Campos's failure to present evidence obviously affects the state of the record, it does not prevent him from presenting legal challenges to the sufficiency of the warrant. Moreover, the government should know that a party who has filed a motion to suppress on Fourth Amendment grounds need not renew his Fourth Amendment arguments at trial in order to challenge the denial of the motion to suppress on appeal. See United States v. Hope, 102 F.3d 114, 117 (5th Cir. 1996) ("[W]here there has been a pretrial motion to suppress, the failure to reiterate the objection [does] not waive it.") (internal quotations omitted). As a result, we will consider the merits of Mr. Campos's challenge to the search.

6

seizure of books, magazines, films, and videos containing images of minors engaged in sexually explicit conduct.

Additionally, the affidavit presented by an FBI agent in support of the warrant provided an explanation of the ways in which computers facilitate the production, communication, distribution, and storage of child pornography. Moreover, the FBI agent provided an explanation as to why it was not usually feasible to search for particular computer files in a person's home:

> Computer storage devices . . . can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site; and
>
> Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The wide variety of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. . . . Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code embedded into the system as "booby trap"), the controlled environment of a laboratory is essential to its complete analysis.

Id. at 17-18.

In the district court proceedings, Mr. Campos presented no evidence to rebut the agent's justification of the search of computer files. Moreover, in neither the district court proceedings nor in his appellate brief has Mr. Campos offered any case law in support of his contention that law enforcement agents must limit their inquiries in the manner he suggests: restricting their searches to the very documents of which they have already seen copies. In fact, a number of courts have upheld warrants similar to the one he challenges here. See, e.g. , United States v. Hall , 142 F.3d 988, 996-97 (7th Cir. 1998) (holding "that the search warrants were written with sufficient particularity because the items listed on the warrants were qualified by phrases that emphasized that the items sought were those related to child pornography"); United States v. Lacy , 119 F.3d 742, 746 (9th Cir. 1997) (upholding warrant authorizing search of the defendant's entire computer system, noting that "[t]he government knew that [the defendant] had downloaded computerized visual depictions of child pornography, but did not know whether the images were stored on the hard drive or on one or more of his many computer disks," and that a customs agent had supplied an affidavit stating that "there was no way to specify what hardware and software had to be seized in order to retrieve the images accurately").

We disagree with Mr. Campos that our decision in United States v. Carey , 172 F.3d 1268, 1271 (10th Cir. 1999), provides grounds for overturning the

search of his computer files. In that case, we did conclude that a police officer violated the Fourth Amendment in conducting a computer search. However, the officer had obtained a warrant to search for computer records pertaining to the distribution of illegal drugs. When the officer inadvertently discovered a pornographic file, he began looking for similar files, thereby expanding the scope of the search without obtaining a second warrant. We characterized this conduct as "an unconstitutional general search." See id. at 1276. Unlike the officer in Carey , the officers here did not expand the scope of their search in a manner not authorized by the warrant.

Nevertheless, our opinion in Carey notes several important limitations on the scope of computer searches of which the parties should be aware. In particular, we observed that the storage capacity of computers may require law enforcement officers to take a special approach. Id. at 1275 n.7. Computers often contain "intermingled documents" (i.e., documents containing both relevant and irrelevant information). See id. at 1275. When law enforcement officers confront such documents a more particularized inquiry may be required:

> [L]aw enforcement must engage in the intermediate step of sorting various types of documents and then only search the ones specified in a warrant. Where officers come across relevant documents so intermingled with irrelevant documents that they cannot feasiblely be sorted at the site, the officers may seal or hold the documents pending approval by a magistrate of the conditions and limitations on a further search through the documents. The magistrate

9

should then require officers to specify in a warrant which type of files are sought.

Id. (citing Ralphael Winick, "Searches and Seizures of Computers and Computer Data," 88 Harv. J.L. & Tech 75, 108 (1994)) (footnote omitted).

Here, Mr. Campos offered no evidence as to the methods used by the officers in searching through his computer files. As a result, we need not consider whether they followed the approach we outlined in Carey. We, therefore, conclude that the district court did not err in denying Mr. Campos's motion to suppress.

## B. Admission of Pornographic Photographs

Mr. Campos next challenges the district court's decision to allow the jury to view the two images that the government charged him with transporting via computer. He maintains that, in light of his offer to stipulate that those images constituted child pornography, there was no reason to show them to the jury and to do so was unduly prejudicial. We review the district court's decision to admit evidence for an abuse of discretion. See United States v. Guardia, 135 F.3d 1326, 1328 (10th Cir. 1998).

Mr. Campos's argument is based on the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997). In Old Chief, the Supreme Court held that the district court abused its discretion in a case involving a charge of

10

possession of a firearm after conviction of a felony when it rejected the defendant's offer to admit that he had been previously convicted of a felony (without indicating the nature of the prior felony), and allowed the prosecution to introduce the judgment of conviction.

In reaching this conclusion, the Court reasoned that because it was the defendant's legal status as a previously convicted felon that was at issue, the defendant's stipulation satisfied the element of the offense charged. See id. at 186. The Court emphasized that its holding constituted an exception to the general rule that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away." Id. at 189. It explained the reasons for this general rule:

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

Id. However, "[t]his recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has . . . virtually no application when the point at issue is defendant's legal status, dependent on some

11

legal judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." Id. at 190.

Old Chief 's holding is thus based on "peculiarities of the element of felony-convict status and of admissions and the like when used to prove it." Id. at 191. As a result, it does not support Mr. Campos's argument. In contrast to the defendant in Old Chief , Mr. Campos's offer to stipulate did not involve his legal status but rather the gist of the government's current case against him—the two pornographic images that he allegedly transported via computer. Mr. Campos's offer thus sought to deprive the prosecution of the very opportunity that should be protected: the opportunity to present the "concrete events of later criminal behavior charged against [a defendant.]" Id. at 190. Accordingly, the district court did not abuse its discretion when it allowed the jury to view the two pornographic images described in the indictment.

## C. Testimony Regarding Screen Name

Mr. Campos further contends that the district court erred in allowing David Rehman (the law enforcement agent with experience in investigating child pornography via computer) to testify about Mr. Campos's choice of screen names. We discern no error in the district court's admission of this evidence.

Prior to trial, the government filed a notice of intent to present evidence

12

pursuant to Fed. R. Evid. 404(b), including evidence "that the term 'Chickenhawk' is a term denoting pedophiles and collectors of child pornography." Aplt's App. at 47. In response, Mr. Campos stated that he did not object to this evidence "insofar as the Government wishes to offer so-called 'expert' opinions that conclude that such a screen name would gather child pornography." Id. at 54. However, Mr. Campos did object to evidence characterizing him as a pedophile.

At trial, the government introduced evidence that one of the screen names registered to Mr. Campos's AOL account was "ChknHawk15." See id. at 321. Additionally, after the government called Mr. Rehman as a witness, the court heard testimony outside the presence of the jury regarding his qualifications and the information he would offer about the meaning of screen names. Mr. Campos objected on the grounds that Mr. Rehman was not qualified as an expert witness. See id. at 260, 268 (stating that Mr. Rehman's testimony "is not science" and that "there is no recognized field of expertise in this so-called sexual exploitation of children"). The court ruled that Mr. Rehman would "be permitted to respond to questions regarding the meaning of the words." Id. at 268. However, the court sustained Mr. Campos's objection "as to the ultimate conclusion." Id. at 269.

Mr. Rehman then testified before the jury as follows:

Q:     What sort of a name is "Chicken Hawk"?

A:     It's actually a combination of two words or two slang phrases. In the parlance of those people who are involved in the sexual exploitation of children, chicken generally refers to a young boy typically probably under the age of 12. A hawk would be someone who goes after a chicken, so a chicken hawk would be someone who is interested in young boys.

Id. at 272.

Mr. Campos now contends that by allowing Mr. Rehman to refer to "the sexual exploitation of children" the government was able to improperly suggest that persons using the screen name "Chicken Hawk" were involved in "actually exploiting children" rather than merely "collecting child pornography." See Aplt's Br. at 19. Mr. Campos thus characterizes Mr. Rehman's testimony as improper under Fed. R. Evid. 404(b) , which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

Before assessing the specific argument advanced by Mr. Campos, it is important to note that we do not here consider a related but more general issue: whether Mr. Rehman's statement that the name "Chickenhawk" refers to persons interested in child pornography is impermissible character evidence under Fed. R. Evid. 404(b). In neither the trial proceedings nor in this appellate brief has Mr.

14

Campos challenged this aspect of Mr. Rehman's testimony on this basis. [2]

As to the specific challenge that Mr. Campos does raise, we do not agree that Mr. Rehman's testimony may be fairly read as stating that those persons using the screen name "Chicken Hawk" are necessarily pursuing or actually engaged in sexual activity with children. It is true that the term "sexual exploitation" is used in some contexts to refer to such actual sexual activity. See, e.g., 18 U.S.C. § 2251(a). However, the ordinary meaning of the term "exploit" is broad enough such that the phrase "sexual exploitation" may refer to the distribution of pornographic images of children. See 5 Oxford English Dictionary 574 (2d ed.1989) (defining "exploit" as "to utilize for one's own ends, treat selfishly as mere workable material"). Similarly, the other phrase used by Mr. Rehman— "interested in young boys"—is broad enough to refer to one who is attracted to pornographic pictures of them. [3]

_____

[2] In fact, some courts have held evidence of a defendant's nickname is inadmissible. See, e.g., United States v. Williams, 739 F.2d 297, 299 (7th Cir. 1984) (concluding that a detective's testimony about the defendant's nickname was improper character evidence under Fed. R. Evid. 404(b)).

[3] Our assessment of Mr. Rehman's testimony as lacking the asserted prejudicial effect comports with the principle that evidence is generally viewed in the manner most favorable to the offering party. See K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1156 n.9 (10th Cir. 1985) (stating that in assessing the admissibility of evidence under Fed. R. Evid. 403, the court "give[s] the challenged evidence its maximum reasonable probative force and its minimum reasonable prejudicial value") (quoting 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 403[03], at 403-25 to 403-26 (1982)); see also United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984) (stating that appellate court review of

Accordingly, Mr. Rehman's testimony does not impermissibly refer to prior bad acts in the manner deemed objectionable by Mr. Campos. The district court did not err in admitting it.

## D. Sufficiency of the Evidence

Finally, Mr. Campos contends that the evidence was insufficient to support his conviction. In particular, he maintains that the government failed to prove that he exercised sufficient dominion and control over the subject computer such that he could have sent the pornographic images to the complainant. In assessing this argument, we review the record de novo, viewing the evidence in the light most favorable to the government and asking whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. See Simpson, 152 F.3d at 1251.

Mr. Campos's challenge to the sufficiency of the evidence is based on the principle that "an individual has constructive possession over an object when he or she knowingly has ownership, dominion, or control over the object and the premises where it is found." United States v. Taylor, 113 F.3d 1136, 1144-45 (10th Cir. 1997). In situations which involve joint occupancy, and where the government makes its case based on circumstantial evidence the government

---

exercise of trial court's discretion under Fed. R. Evid. 403 is "limited," and must "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing is prejudicial effect")).

16

"must present evidence to show some connection or nexus between the defendant and the . . . contraband." Id. at 1145 (internal quotations omitted). Mr. Campos points to the evidence that he introduced indicating that Mr. Hibbs had taken responsibility for the pornographic images at issue.

We are not persuaded by Mr. Campos's reading of the record. To be sure, the testimony of defense witnesses provides some support for Mr. Campos's contention that he was not responsible for transporting the pornographic images. However, the government presented circumstantial evidence supporting its contention that Mr. Campos was responsible: the AOL account was in Mr. Campos's name and it was paid for with his credit card; Mr. Campos admitted he used the screen name "IAMZEUS;" and the document examiner testified that it was probably Mr. Campos's handwriting on a document with the file name resembling the file name that contained a pornographic photograph.

In light of this conflicting testimony, a reasonable juror could have rejected Mr. Campos's defense, relied on the government's evidence, and found Mr. Campos guilty beyond a reasonable doubt. We therefore conclude that the evidence was sufficient to support his conviction for transporting child pornography through interstate commerce via computer, in violation of 18 U.S.C. § 2252(a)(1).

## III.  CONCLUSION

For the reasons set forth above, we AFFIRM  Mr. Campos's conviction.