**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 29 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

ROBERT WAYNE FISCUS,

　　Defendant-Appellant.

No. 02-4172
(District of Utah)
(D.C. No. 99-CR-627-C)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McWILLIAMS**, and **HARTZ**, Circuit Judges.

## I.  INTRODUCTION

Defendant Robert Fiscus appeals the district court's denial of his motion to suppress evidence obtained from the search of his home and the seizure of his computer hard drive and diskettes on July 20, 1999, and his statements made to law enforcement agents on October 13, 1999.  This court has jurisdiction under 28 U.S.C. § 1291 and **affirms**.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## II. BACKGROUND

Fiscus was paroled from South Carolina state prison while serving a sentence for committing a lewd act with a minor and for criminal sexual conduct with a minor. Pursuant to his parole agreement, Fiscus agreed to "refrain from the violation of any Federal, State, or Local penal law."

While still on parole, Fiscus moved to Utah, and the Utah Board of Pardons agreed to supervise his parole. Fiscus signed an additional Parole Agreement which authorized "a Parole Agent to search [Fiscus'] person, residence, vehicle, or any other property under [Fiscus'] control, without a warrant, any time day or night, upon reasonable suspicion as ascertained by a Parole Agent, to insure compliance with the conditions of [his] parole."

On June 9, 1999, Herbert, a relative of Fiscus, telephoned the Orem Police to report his observation of child pornography on Fiscus' computer. Herbert informed Officer Todd Moake that he had observed the child pornography while repairing Fiscus' computer and that he had erased it from the computer's hard drive. Herbert told Moake that Fiscus had asked him not to look at the files which contained the images. Herbert also told Moake that he believed Fiscus had downloaded the child pornography from the Internet and that Fiscus continued to have access to the Internet. Finally, Herbert told Moake that he believed Fiscus

was on parole for a sex crime. Moake contacted Fiscus' parole officer, Jim Mower.

On July 20, 1999, Moake, Mower and Steve Bulkley, a computer forensics specialist, went to Fiscus' home to conduct a search. Mower told Fiscus that he was doing a parole check and, specifically, that he was going to check Fiscus' computer for inappropriate photographs. Fiscus told the officers that there were embarrassing photographs on the computer. Mower asked Fiscus if he could also search the rest of Fiscus' home. Fiscus told Mower, "You're not going to find anything – anything there because everything is on the computer."

When the officers began to search Fiscus' computer, they observed that Fiscus' computer wallpaper was a nude adult male. Bulkley attempted to view the hard drive on Fiscus' computer, but was unable to do so in Fiscus' home without destroying or corrupting the stored files. The officers also discovered an open box of diskettes next to the computer. The first disk visible to the officers was labeled in handwriting "Bob's Pics." Mower testified that he told Fiscus that he was going to take his computer hard drive and diskettes so that they could be searched.

On July 21, 1999, Moake, Mower, and Bulkley reviewed the hard drive and diskettes seized from Fiscus' home. While no child pornography was found on the hard drive, the officers discovered what they believed to be child pornography

on the diskettes labeled "Bob's Pics." Moake contacted United States Customs Agent Donald Daufenbach regarding the images found on Fiscus' diskettes. On July 22, 1999, Daufenbach viewed the images and determined that they contained child pornography. Daufenbach again viewed the diskettes on September 2, 1999 to ensure that the images on the diskettes were consistent with the CD-ROM copy made of the diskettes by Bulkley.

On July 22, 1999, Mower asked Fiscus to agree to an extension of his parole pending the investigation. Fiscus agreed and signed a document to that effect. Fiscus' parole, however, was not extended. His parole ended on July 26, 1999 without being revoked. In August 1999, Mower informed Fiscus that his parole was terminated.

On October 13, 1999, Moake, Daufenbach, and Mower went to Fiscus' place of employment. Daufenbach asked Fiscus if the officers could meet with him. Fiscus took the officers to a back room. Daufenbach questioned Fiscus for about thirty minutes concerning the images found on the seized diskettes. During the interview, Fiscus made incriminating statements.

On November 19, 1999, Fiscus was charged with "knowing[] possess[ion] [of] material . . . containing an image of child pornography, that was mailed, shipped, and transported in interstate [or] foreign commerce, and which was produced using materials that have been mailed, shipped, and transported in

-4-

interstate and foreign commerce," in violation of 18 U.S.C. § 2252A(a)(5)(B).

Fiscus moved to suppress the evidence obtained from the July 20, 1999 search of

his home and the seizure of his computer hard drive and diskettes and his October

13, 1999 statements to law enforcement agents. After an evidentiary hearing, the

district court determined that Fiscus consented to the search of his home and the

officers properly seized the computer hard drive and diskettes because they were

in plain view. Further, the district court determined that the subsequent search of

the computer diskettes was permissible because the initial "seizure was justified

by a reasonable belief that child pornography would be found" on the diskettes.

Finally, the district court concluded that Fiscus' statements to Moake, Mower, and

Daufenbach were voluntarily made. Accordingly, the district court denied the

motion to suppress.

## III. DISCUSSION

Fiscus appeals the denial of his motion to suppress. This court views the

evidence in a light most favorable to the government and reviews the district

court's findings of fact for clear error. *United States v. Lewis*, 71 F.3d 358, 360

(10th Cir. 1995). The district court's determination that the search and seizure

was reasonable under the Fourth Amendment, however, is reviewed *de novo*. *Id*.

### A.  Search of Fiscus' Home[1]

The Fourth Amendment generally requires law enforcement officers to obtain a search warrant supported by probable cause prior to conducting a search of a residence.  *United States v. Tucker*, 305 F.3d 1193, 1199 (10th Cir. 2002).  Parolees who have assented to the search of their residence under a parole agreement, however, have a diminished expectation of privacy.  *United States v. Knights*, 534 U.S. 112, 119-20 (2001).  Further, the state's interest in monitoring the behavior of a parolee is heightened because of the increased likelihood that a parolee will violate the law.  *Tucker*, 305 F.3d at 1199.  Therefore, an officer may conduct a warrantless parole search pursuant to a search condition in a valid parole agreement when they have a reasonable suspicion that the parolee is in violation of the parole agreement.  *Id*.

Fiscus argues that all evidence taken from his home should be suppressed because the July 20, 1999 search of his home was an invalid parole search.  Specifically, Fiscus argues that (1) the search was not based upon reasonable

---

[1]The district court concluded that because Fiscus consented to the search of his home, the search was lawful under the Fourth Amendment.  This court, however, may "affirm [the] district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court."  *Medina v. City & County of Denver*, 960 F.2d 1493, 1495 n.1 (10th Cir. 1992) (quotation omitted).

suspicion, and (2) the purpose of the search was not reasonably related to Mower's duties as a parole officer.

## 1. Reasonable Suspicion

"Reasonable suspicion is a less demanding standard than probable cause" because "reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *United States v. Tuter*, 240 F.3d 1292, 1296 n.2 (10th Cir. 2001). Unlike probable cause, "reasonable suspicion is merely a particularized and objective basis for suspecting criminal activity." *Tucker*, 305 F.3d at 1200. "To determine whether the investigating officers had reasonable suspicion, we consider both the quantity of information possessed by law enforcement and its reliability." *Id*. (footnote omitted).

Fiscus contends that the officers lacked reasonable suspicion to search his home because the tip they relied on was unreliable and stale. The reliability of information received from an informant is assessed by considering "the credibility or veracity of the informant, the basis of the informant's knowledge, and the extent to which police are able independently to verify the reliability of the tip." *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997). Herbert, a citizen informant, told the Orem Police that he saw what he believed was child pornography on Fiscus' home computer. Because Herbert disclosed his identity to the police, he was a credible informant. *See J.B. v. Wash. County*, 127 F.3d 919,

929-30 (10th Cir. 1997) (noting that citizen-informants are presumed to be reliable). Herbert viewed the images while repairing Fiscus' computer. His personal knowledge, therefore, was the basis of his tip. Moreover, Herbert provided detailed information to the Orem Police regarding the images he observed on Fiscus' computer, Fiscus' Internet capabilities, and Fiscus' criminal history. Accordingly, Herbert's tip to the Orem Police was reliable.

Fiscus argues, however, that the tip was stale when Fiscus' home was searched because: (1) the tip was made over two months before the search was conducted, and (2) Herbert had informed the Orem Police that he had erased the images from Fiscus' hard drive. To determine whether information relied upon as the basis for a search is stale, this court considers "the nature of the crime and the length of criminal activity." *See United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (considering whether information relied upon to obtain a search warrant was stale). Herbert informed the Orem Police that he believed Fiscus obtained the images from the Internet and that Fiscus continued to have Internet access. Herbert also informed the Orem Police that Fiscus asked him not to look at the files which contained the images and that he, rather than Fiscus, deleted the images on Fiscus' computer. Given this information and the knowledge that Fiscus was on parole for criminal sexual conduct with a minor, Herbert's tip was not stale at the time of the search and was sufficient to establish a reasonable

suspicion that Fiscus violated the terms of his parole agreement. *Tucker*, 305 F.3d at 1201 (reasoning that reasonable suspicion may be established on information less reliable than that required to establish probable cause).

This court concludes, therefore, the parole search conducted of Fiscus' residence was supported by reasonable suspicion.

### 2. Purpose of the Search

Fiscus also contends that the July 20, 1999 search of his residence was an invalid parole search because the purpose of the search was not reasonably related to Mower's duties as a parole officer. Fiscus argues that Mower was used as a "stalking horse" of the police to conduct an investigatory search of his home.

In *Tucker*, this court concluded that a parole search is valid under the Fourth Amendment if it is conducted pursuant to a search provision of a parole agreement and is supported by reasonable suspicion even if the "search was a subterfuge for a law enforcement investigation." 305 F.3d at 1200. Fiscus' parole agreement authorized the search of his residence to "insure compliance with the conditions of [his] parole." Moreover, Fiscus' parole was conditioned on his compliance with all federal, state, and local penal laws. Therefore, because we conclude that the officers had reasonable suspicion that Fiscus possessed child pornography on his home computer in violation of his parole agreement, the July

20, 1999 search of his residence was a valid parole search under the Fourth Amendment regardless of the officers' motivation in conducting the search.

**B. Seizure of the Diskettes**[2]

Fiscus argues that the officers' lacked justification to seize his diskettes, and, therefore, the evidence obtained from the diskettes must be suppressed under the Fourth Amendment.

Typically, an object may not be seized unless it is identified and particularly described in a valid warrant. *See United States v. Guidry*, 199 F.3d 1150, 1154 (10th Cir. 1999). Law enforcement officers, however, may seize an object without a warrant if the object is in plain view. *Tucker*, 305 F.3d at 1202. The following conditions must be satisfied to justify a warrantless search under the plain view doctrine: (1) the officer must "arriv[e] at the place from which the evidence could be plainly viewed" without violating the Fourth Amendment; (2) the incriminating character of the item must be immediately apparent such that the officer has "probable cause to believe the object to be contraband or evidence of illegal activity" upon seeing the object; and (3) the officer must "have a lawful

---

[2]Fiscus argues that the seizure of the computer also violated the Fourth Amendment. The only evidence of child pornography, however, was found on his diskettes labeled "Bob's Pics." Therefore, the court will confine its discussion to the validity of the seizure and subsequent search of the diskettes.

right of access to the object."[3] *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993) (quotations omitted); *Tucker*, 305 F.3d at 1202 (footnote omitted).

Because the seizure of Fiscus' diskettes meets these conditions, it is justified under the plain view doctrine. The seizing officers had a reasonable suspicion that Fiscus was in violation of his parole agreement by possessing child pornography on his computer; they were, thus, entitled to search his residence. Therefore, the officers arrived in the place where Fiscus' diskettes were plainly apparent without violating the Fourth Amendment.

Fiscus, however, argues that the incriminating character of the diskettes was not immediately apparent to the officers. Fiscus was on parole for committing a lewd act with a minor and for criminal sexual conduct with a minor. Prior to searching his home, the officers were informed by Herbert that Fiscus stored child pornography on his computer. When the officers arrived at Fiscus' residence and informed him that they were going to conduct a search, Fiscus told the officers that there were embarrassing photographs on the computer. Fiscus also told the officers that they need not search the rest of his residence stating,

---

[3]As discussed in *United States v. Tucker*, because the "[o]fficers were entitled to enter [Fiscus'] home and conduct a search merely upon reasonable suspicion[,] [a]rguably . . . they only needed reasonable suspicion that any item viewed was contraband or evidence of illegal activity or parole violations in order to seize it under the plain-view doctrine." 305 F.3d 1193, 1203 n.13 (10th Cir. 2002). Because we conclude *infra* that the officers had probable cause, we need not decide this issue.

"You're not going to find anything – anything there because everything is on the computer." Further, the diskettes seized were labeled "Bob's Pics." From this information, the officers had probable cause to believe that Fiscus' computer and diskettes contained child pornography. While Fiscus argues that his statement regarding the existence of embarrassing photographs on the computer could have referred to the wallpaper depicting a nude adult male and the label "Bob's Pics" is innocuous, "probable cause merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be . . . useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Naugle*, 997 F.3d at 823 (quotation omitted) (concluding that while "no officer can tell upon first sight whether a weapon is properly registered" and, therefore, illegally possessed, the officer had probable cause to seize the weapon). Accordingly, the incriminating character of the computer and diskettes was immediately apparent to the officers searching Fiscus' residence.

Finally, because the parole agreement authorized the officers to search all of Fiscus' property, the officers had a lawful right of access to Fiscus' diskettes. *See Tucker*, 305 F.3d at 1203.

**C. The Search of Fiscus' Diskettes**

Fiscus argues that the subsequent search of his diskettes violated the Fourth Amendment because the officers were required to obtain a search warrant prior to conducting the search. To support his argument, Fiscus cites this court's decisions in *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999), and *United States v. Campos*, 221 F.3d 1143 (10th Cir. 2000). Fiscus argues that, under *Carey* and *Campos*, computer searches require a "special approach" in that law enforcement officers may not search computer files without a warrant, absent exigent circumstances. Fiscus' argument that *Carey* and *Campos* require the suppression of the evidence found on his diskettes is unavailing.

In *Carey*, law enforcement officers suspected the defendant was involved in illegal drug sales. 172 F.3d at 1270. The officers obtained the defendant's consent to search his apartment and, as a result, seized the defendant's computer. *Id.* The officers then obtained a search warrant to search the computer files for "names, telephone numbers, ledger receipts, addresses, and other documentary evidence pertaining to the sale and distribution of controlled substances." *Id.* While searching his computer, the officers discovered several files which contained child pornography. *Id.* at 1271. The defendant moved to suppress the evidence of child pornography obtained from the computer files. *Id.* The *Carey*

court held that because the search went beyond the justification and basis for the warrant, the search violated the Fourth Amendment. *Id*. at 1273-74.

While Fiscus argues that *Carey* stands for the broad proposition that, absent exigent circumstances, law enforcement may not search a computer without a warrant, our decision in *Carey* merely stands for the proposition that law enforcement may not expand the scope of their search beyond its original justification. *See Campos*, 221 F.3d at 1148. In this case, unlike the search in *Carey*, the original justification for seizing Fiscus' diskettes was the officers' probable cause to believe that the diskettes contained images of child pornography. Because the evidence actually obtained in the search of Fiscus' diskettes was consistent with the original justification for the seizure, the search was permissible under *Carey*.

Fiscus also argues that our decision in *Campos* mandates that law enforcement obtain a warrant prior to conducting a search of a computer. The *Campos* court distinguished the search in *Carey* and affirmed the district court's denial of the defendant's motion to suppress, reasoning that "the officers . . . did not expand the scope of their search in a manner not authorized by the warrant." *Id*. The *Campos* court did note, however, that *Carey* "require[s] law enforcement officers to take a special approach" when they discover files in a computer search that contain information that is both relevant and irrelevant to the scope of the

-14-

search. *Id.* In this case, however, the officers did not discover the images of child pornography in files intermingled with other information not relevant to the scope of their search. Therefore, Fiscus' argument regarding *Campos* is similarly unavailing.

Accordingly, Fiscus' narrow arguments do not present a sufficient basis on which to suppress the evidence obtained during the search of his diskettes.

### D. Fiscus' Statements on October 13, 1999

Fiscus contends that the statements he made to the officers at his place of employment on October 13, 1999 were not voluntarily made and, thus, were made in contravention of the Fifth Amendment. The district court determined that the totality of the circumstances demonstrated that Fiscus' statements were voluntary. This court reviews *de novo* the district court's determination that the statements were voluntarily made. *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999). The district court's underlying factual findings, however, are accepted absent clear error. *Id.*

> To determine whether a statement was voluntary, we consider:
>
> (1) the defendant's age, intelligence, and education; (2) the length of the detention and interrogation; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to or threatened with any physical punishment.

*Id.* at 1004.

-15-

No single factor is considered determinative. *Id.* Rather, this court determines "voluntariness on the totality of the circumstances." *Id.*

Fiscus had prior experience with the criminal justice system. He was questioned at his place of employment. Moreover, Fiscus directed the officers to the room in which the questioning was conducted. Fiscus was only questioned for approximately thirty minutes and was neither threatened with any physical punishment nor arrested. Fiscus, however, argues that he was led to believe that he was still bound by the terms of his parole agreement. Consequently, Fiscus argues, he believed he was obligated to answer the officers' questions. While Mower was present when Daufenbach questioned Fiscus, Mower did not participate in the questioning. Moreover, Mower informed Fiscus in August 1999 that he was no longer on parole. Finally, the officers never informed Fiscus that he was obligated to answer their questions. Accordingly, considering the totality of the circumstances, Fiscus' statements were voluntarily made.

## IV. CONCLUSION

For the foregoing reasons, the district court's denial of Fiscus' motion to suppress is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge