**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

STEPHEN GRIMMETT,

        Defendant - Appellant.

No. 05-3030

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. CR 04-40005-01-RDR)**

---

Christopher M. Joseph (with M. Kristine Savage and Stephen M. Joseph on the briefs), Joseph & Hollander, P.A., Topeka, Kansas, for Defendant-Appellant.

Tanya J. Treadway, Assistant United States Attorney (with Eric F. Melgren, United States Attorney on the brief), Topeka Kansas, for Plaintiff-Appellee.

---

Before **HENRY**, Circuit Judge, **McKAY**, and **HARTZ,** Circuit Judges.

---

**HENRY**, Circuit Judge.

---

        Stephen Grimmett appeals the district court's denial of his motion to

suppress evidence retrieved pursuant to a warrant to search his home based on

information that he possessed and produced child pornography. Mr. Grimmett also challenges the constitutionality of one statute under which he was convicted, 18 U.S.C. § 2251, which criminalized that production of child pornography. We affirm Mr. Grimmett's conviction and hold that § 2251 is a valid exercise of Congress's power, and is also constitutional as applied to Mr. Grimmett.

## I. FACTUAL BACKGROUND

On June 29, 2002, Mr. Grimmett invited a six-year old boy to his house after giving him a Mountain Dew drink. Mr. Grimmett undressed, lay down on a bed, then instructed the child how to masturbate him and how to perform fellatio on him. Mr. Grimmett instructed the child by telling him what to do, showing him what to do, and by having the child emulate what was occurring on a video playing in the bedroom.

Mr. Grimmett taped the sodomy with an 8mm video camera, copied the 8mm tape onto a VHS tape, and loaded eight still pictures from the videotape onto his computer. Mr. Grimmett has admitted that he showed the tape to at least one other person. The forensic analysis of the defendant's computer indicated that he received over 1,500 images and 142 movies of child pornography over the Internet.

On September 25, 2002, Detective Scott Askew, a detective with the

Shawnee County, Kansas, Sheriff's Office, presented an affidavit in support of a

search and seizure warrant to Shawnee County District Court Judge Thomas

Conklin. The affidavit stated in its third paragraph:

> This affidavit is made in support of an application for a
> warrant to search the entire premises located at 920 SE 33rd
> Street, Topeka, Shawnee County, Kansas. **Additionally,
> this application is to search any computer media found
> therein.**

Aplt's App. at 488 (Aff. in Support of a Warrant, Det. Scott B. Askew, dated

Sept. 25, 2002) (emphasis added).  The affidavit further stated: "It is only with

careful laboratory examination of electronic storage devices that it is possible to

recreate the evidence trail." *Id.* at 491.

The affidavit indicated that

• A woman who, unbeknownst to the defendant, served as a confidential

informant for the Shawnee County Sheriff's Office on drug cases was at

the defendant's residence on September 21, 2002, performing oral sex

for money.

• During this sexual encounter, the defendant was playing an adult

pornographic video on his television.

• The defendant could not get sexual gratification from the adult

pornography.

• Therefore, the defendant switched to playing a video on his computer,

which depicted child pornography.

• The child pornography involved a female child, approximately nine or ten years old, performing oral sex on an adult male.

• Following the sexual encounter, the defendant asked the woman whether she would be interested in having sex with him and a ten-year-old girl.

• The defendant offered to pay the woman hundreds of dollars if she could provide him with young girls.

• The defendant also asked the woman whether she would be interested in bringing her minor children, a male and a female, to the defendant's house for sex.

• The defendant offered to pay the woman well if she would agree to bring her own children to him for sex.

• On September 24, 2002, the woman reported what had occurred at the defendant's house to Sheriff's Deputy Phil Higdon.

The state court judge signed the warrant, indicating his conclusion that probable cause existed that evidence of the sexual exploitation of a child, in violation of Kan. Stat. Ann. § 21-3516, would be found in defendant's residence.

The warrant authorized, among other things, the search and seizure of "[a]ny and all computer hardware," and "[a]ny and all computer software." Aplt's App. at 494 (Search Warrant, dated Sept. 25, 2002). The warrant further

-4-

directed law enforcement officers to seize computer equipment, computer storage devices, and various items related to the use of the computer equipment, as well as a variety of other media that contained depictions of minors engaged in sexually explicit conduct, i.e., child pornography, including books, magazines, originals, copies and negatives, motion picture films, and videocassettes.

Detective Askew removed the hard disk drive from a computer in Mr. Grimmett's home and viewed it on a laptop computer he had brought with him. After Detective Askew viewed various items, he returned the search warrant to the judge and requested the assistance of Immigration and Customs Enforcement in the investigation and examination of the computer's contents.

The Shawnee County Kansas Sheriff's Department delivered to Agent James Kanatzar the computer hard drive seized from the defendant's residence. Agent Kanatzar had over four years of experience investigating child pornography and has been trained in computer forensics since 1998.

On October 1, 2002, Agent Kanatzar made a bit-by-bit copy of the hard drive to perform his forensic analysis. Thereafter, Agent Kanatzar examined the directories and subdirectories for images of child pornography. Although Agent Kanatzar opened every folder, he did not open every file, instead concentrating on those files most likely to contain child pornography images – files containing extensions indicating pictures (.jpg, .gif) and movies (.avi, .mpg).

Agent Kanatzar's examination of the defendant's computer revealed over 1,500 images containing child pornography, and 142 movies of child pornography, with creation dates ranging from February 2001 through September 2002. Agent Kanatzar found no evidence of distribution.

## II. PROCEDURAL HISTORY

On January 28, 2004, a grand jury returned an indictment against the defendant, charging him with Count 1, producing child pornography, in violation of 18 U.S.C. § 2251(a); and Count 2, possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and Count 3, forfeiture, 18 U.S.C. § 2253. Mr. Grimmett entered a conditional plea of guilty to all counts, reserving the right to appeal the district court's denials of his (1) motion to suppress evidence and (2) motion to dismiss Count 1. The district court sentenced the defendant on Counts 1 and 2 to concurrent ten-year terms of imprisonment and concurrent three-year terms of supervised release.

## III. DISCUSSION

### A. Motion to suppress

#### 1. Standard of Review

When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. *United States v.*

*Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). The ultimate question of reasonableness under the Fourth Amendment is a legal conclusion that we review de novo. *Id.*

If the search and seizure was done pursuant to a warrant, we review the issuing judge's finding of probable cause with great deference: we look to ensure that the judge "had a 'substantial basis' for concluding" that the affidavit in support of the warrant established probable cause. *United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir. 1996). The issuing judge's task "is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

2. Analysis

Mr. Grimmett asked the district court to suppress both the child pornography found on his computer and in the video tapes. The district court denied defendant's motions to suppress, reasoning that (1) no second warrant was required to search the computer because the state search warrant authorized the search of the computer equipment and computer storage devices seized from defendant's home; (2) Agent Kanatzar did not perform an impermissible general search of the computer equipment and computer storage devices; and (3) probable cause existed to search for child pornography present in the defendant's

residence, regardless of the type of media in which it was contained.  For the reasons stated below, we agree with the reasoning of the district court.

### a. No additional warrant was required.

Mr. Grimmett argues that the warrant authorized only the seizure, but not the subsequent search, of his computer and computer storage devices (collectively, "the computer").  Although not couched in "particularity" terms, Mr. Grimmett appears to argue that the warrant was not sufficiently particular to authorize a search of the computer.

Mr. Grimmett relies on *United States v. Carey*, 172 F.3d 1268, 1270 (10th Cir. 1999) for his argument that a second warrant is required to search a properly seized computer.  In *Carey*, the original warrant authorized a search of the computer for evidence related to illegal drug sales.  But, when the officers found evidence of another crime – possession of child pornography – another warrant was needed to search for this evidence, which was beyond the scope of the original warrant.  *Id.* at 1271, 1273-74 ("[I]t is plainly evident each time [the officer] opened a subsequent JPG file, he expected to find child pornography and not material related to drugs. . . .  Under these circumstances, we cannot say the contents of each of those files were inadvertently discovered.").

*Carey* does not support Mr. Grimmett's argument, but simply stands for the proposition that law enforcement may not expand the scope of a search beyond its

original justification. In this case, unlike the search in *Carey*, where the probable cause that permitted the search related to drugs, the original justification for the search and seizure of the computer was the probable cause to believe the defendant possessed child pornography. We hold that the evidence obtained in the search of the defendant's computer was consistent with the probable cause originally articulated by the state court judge; hence, the search was permissible under *Carey*.

Moreover, the affidavit underlying the application for a search warrant clearly states that Detective Askew sought the authority to search both the premises and the computers:

> This affidavit is made in support of an application for a warrant to search the entire premises located at 920 SE 33rd Street, Topeka, Shawnee County, Kansas. Additionally, this application is to search any computer media found therein.

Aplt's App. at 488.

The affidavit also made clear that the search of the computer would be off-site in a laboratory setting: "It is only with careful laboratory examination of electronic storage devices that it is possible to recreate the evidence trail." *Id.* at 491. In turn, the warrant expressly refers to the "evidence under oath before me," which is, of course, a direct and explicit reference to the affidavit. *See id.* at 494. Accordingly, we hold that the warrant authorized both the seizure and search of

the computer. *See United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000) (upholding seizure of "computer equipment which may be, or is used to visually depict child pornography") (internal quotation marks omitted); *see, e.g., United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) (holding that second warrant for search of computer not required, stating that "[a] sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application; and a search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs" and upholding seizure of "[a]ny and all computer software and hardware, . . . computer disks, disk drives" in a child pornography case); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (warrant permitting "blanket seizure" of computer equipment from defendant's apartment was not insufficiently particular when there was probable cause to believe that computer would contain evidence of child pornography offenses); *United States v. Henson*, 848 F.2d 1374, 1382-83 (6th Cir. 1988) (permitting seizure of "computer[s], computer terminals, . . . cables, printers, discs, floppy discs, [and] tapes" that could hold evidence of the defendants' odometer tampering scheme); *United States v. Albert*, 195 F. Supp. 2d 267, 275-76 (D. Mass. 2002) (upholding warrant for seizure of computer and all related software and storage devices where such an expansive search was "the only practical way" to obtain images of child

pornography).

Additionally, we note we have adopted a somewhat forgiving stance when faced with a "particularity" challenge to a warrant authorizing the seizure of computers. In *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998), the defendant claimed that the computer disks and hard drive were the equivalent of closed containers, requiring a second warrant to search them. In *Simpson,* we rejected this argument, stating there is "no authority finding that computer disks and hard drives are closed containers somehow separate from the computers themselves." *Id.*

> b. The search was not an impermissible general search of the
>
> computer.

Mr. Grimmett's second attack on the search of his computer is that Agent Kanatzar conducted an impermissible general search of the computer. Mr. Grimmett suggests that Agent Kanatzar made no "special approach" to address "intermingled documents" (i.e. documents containing both relevant and irrelevant information). *See Campos*, 221 F.3d at 1148.

We agree with Mr. Grimmett that "[o]fficers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001). However, we also recognize that a computer

search "may be as extensive as reasonably required to locate the items described in the warrant." *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982).

The search warrant authorized the search of "any [computer] equipment" that can create or display computer data. In addition, the warrant encompassed "any and all computer software." Aplt's App. at 494. Despite these broad terms, Agent Kanatzar testified that he specially searched for files with images, with files extensions such as "jpg," "mpg," "bmp," and "gif." Aplt's App. at 348-49. There is no evidence of exploratory rummaging through files, or inadvertent discoveries. *See Campos,* 221 F.3d at 1147. No wholesale searching occurred here, despite the broad authority the warrant may have granted. *See Walser*, 275 F.3d at 987 (upholding a search and noting "[t]he fact of the matter, however, is that no such wholesale searching occurred here"). The district court correctly denied defendant's motion to suppress the evidence obtained as a result of the search of his computer.

c. Probable cause existed to search for child pornography in Mr. Grimmett's residence.

Mr. Grimmett's third contention is that the issuing judge did not have probable cause to issue a warrant for more than the child pornography contained on his computer. In other words, the defendant contends that the search should

have been restricted to the image described by the confidential informant and like images on the computer. According to Mr. Grimmett, there was no probable cause to support a warrant for the seizure of videotapes and other non-computer related property.

In determining whether probable cause exists to issue a warrant, the issuing judge must decide whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Simpson*, 152 F.3d 1241, 1246 (10th Cir. 1998) (internal quotation marks omitted). A reviewing court is to interpret search warrant affidavits in a common sense and realistic fashion. *United States v. Ventresa*, 380 U.S. 102, 108 (1965). The issuing judge is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts. *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998). A reviewing court should uphold the warrant as long as the issuing judge had a "substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks omitted).

"Upon review of the record, we are not convinced that the warrant was overly broad," and we agree that the warrant was directed at items related to child pornography. *Campos*, 221 F.3d at 1147. The warrant authorized the agents to seize any and all computer equipment, which "serve[s] four functions in

connection with child pornography . . . . [p]roduction, communication, distribution and storage." Aplt's App. at 490. The warrant also authorized the seizure of books, magazines, films, correspondence, and videos containing any visual depiction of minors engaged in sexually explicit conduct. Because the warrant, as it applied to non-computer related equipment, contained sufficiently particularized language requiring a nexus with child pornography, it was not overly broad. *See Campos*, 221 F.3d at 1147 (citing *United States v. Hall*, 142 F.3d 988, 996-97 (7th Cir. 1998) (holding "that the search warrants were written with sufficient particularity because the items listed on the warrants were qualified by phrases that emphasized that the items sought were those related to child pornography").

### B. Challenges to 18 U.S.C. § 2251

We understand Mr. Grimmett as having made two separate, though overlapping arguments for overturning his conviction under 18 U.S.C. § 2251. Section 2251 was enacted as a part of the Protection of Children Against Sexual Exploitation Act of 1977. It prohibits, in pertinent part, the production of child pornography if the child pornography "was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any

means, including by computer . . . ." 18 U.S.C. § 2251(a).[1]

First, Mr. Grimmett maintains that § 2251 is facially unconstitutional: under no circumstances does Congress have the power under the Commerce Clause power to proscribe the local intrastate production of child pornography. Second, Mr. Grimmett contends that § 2251 is unconstitutional as applied to his conduct, i.e., even if Congress has the power to reach some offenses, it is not empowered to reach conduct like his. Recent caselaw from the Supreme Court and in our circuit enables us to easily resolve both questions.

### 1. Facial challenge

We review the constitutionality of a statute de novo. *United States v. Dorris*, 236 F.3d 582, 584 (10th Cir. 2000). To determine whether § 2251 is a valid exercise of Congress' commerce power, we begin with an overview of the nature of that power. Article I, § 8 of the United States Constitution provides that "The Congress shall have the Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cls. 1 & 3.

---

[1]We do not read Mr. Grimmett's motions or appellate briefs to raise challenges as to the sufficiency of the evidence demonstrating the use of materials that had been transported in interstate commerce. As such, we have no need to reach whether the prosecution must prove the use of instrumentalities which have moved in interstate commerce to sustain a conviction under this § 2251(a) as it is worded. It seems unlikely that any case would arise in which such evidence could not be produced.

Mr. Grimmett suggests that § 2251(a) contains, at best, an attenuated link to the child pornography trade. Such a challenge is a difficult one to mount successfully, and Mr. Grimmett is unable to make the necessary showing here. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

Pending this appeal, the Supreme Court decided *Gonzales v. Raich*, 125 S. Ct. 2195 (2005), in which it rejected an as-applied challenge to the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* In addition, our court has recently rejected an as-applied challenge to § 2251(a), applying the Court's reasoning in *Raich,* coupled with the standard four-factor analysis applied to such challenges. *See United States v. Jeronimo-Bautista*, 425 F.3d 1266 (10th Cir. 2005) (rejecting as-applied challenge to § 2251(a)). Borrowing largely from our analysis in *Jeronimo-Bautista*, we hold that § 2251(a) reaches intrastate activity that substantially affects the interstate child pornography market, and, as such, it is a facially valid exercise of Congress's Commerce Clause power.

To consider whether or not Congress was empowered to enact § 2251, we consider the four factors delineated by the Supreme Court in *United States v. Morrison*, 529 U.S. 598 (2000), and in *United States v. Lopez*, 514 U.S. 549

(1995): whether (1) the activity at which the statute is directed is commercial or economic in nature; (2) the statute contains an express jurisdictional element involving interstate activity that might limit its reach; (3) Congress has made specific findings regarding the effects of the prohibited activity on interstate commerce; and (4) the link between the prohibited conduct and a substantial effect on interstate commerce is attenuated. *See Jeronimo-Bautista*, 425 F.3d at 1269.

This court has already determined that § 2251 is directed at an activity that is economic in nature. *See id.* at 1271. Relying on *Raich*, the *Jeronimo-Bautista* panel concluded that the defendant's production of images was "economic in nature" reasoning that "[p]rohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product." *Id.* (quoting *Raich*, 125 S. Ct. at 2211). "The same reasoning is applicable to the intrastate production of child pornography." *Id.*; *United States v. Holston*, 343 F.3d 83, 88 (2d Cir. 2003) ("Producing child pornography, like manufacturing controlled substances–and unlike the activities targeted in *Lopez* or *Morrison*–concerns obviously economic activity.") (internal quotation marks omitted).

As to the jurisdictional element, as in *Jeronimo-Bautista*, "we need not linger on this issue." 425 F.3d at 1273 n.4. Because we conclude below that Mr.

-17-

Grimmett's production of intrastate pornography "has a substantial impact on interstate commerce, any 'failure of the jurisdictional element effectively to limit the reach of the statute is not determinative.'" *Id.* (quoting *United States v. Holston*, 343 F.3d at 89); *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1068 (D.C. Cir. 2003) ("[T]he absence of such a jurisdictional element simply means that courts must determine independently whether the statute regulates activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[ ] interstate commerce.") (internal quotation marks omitted).

We have also concluded that Congress' fact finding regarding how the intrastate production of child pornography and its impact upon the larger interstate pornography market was sufficient under *Raich*. *See Jeronimo-Bautista*, 425 F.3d at 1271 (noting that the Supreme Court has "'never required Congress to make particularized findings in order to legislate'") (quoting *Raich*, 125 S Ct. at 2208). Congress made explicit findings regarding "the need to diminish [the] national market" for child pornography and such findings "support the contention that 'prohibiting the production of child pornography at the local level' helps to further the Congressional goal." *Id.* (quoting *United States v. Morales-de Jesus,* 372 F.3d 6, 12 (1st Cir. 2004).

Finally, in *Jeronimo-Bautista*, in considering the final *Morrison* factor,

whether the relationship between the regulated activity and a substantial effect on interstate commerce is attenuated, we determined that the relationship is not attenuated. We reasoned that, under the aggregation theory relied upon in *Raich* and espoused in *Wickard v. Filburn*, 317 U.S. 111 (1942):

> the intrastate production of child pornography could, in the aggregate, have a substantial effect on the interstate market for such materials. In *Raich,* the respondents were "cultivating, for home consumption, a fungible commodity for which there [was] an established, albeit illegal, interstate market." Child pornography is equally fungible and there is no question an established market exists for its sale and exchange. The Court in *Raich* reasoned that where there is a high demand in the interstate market for a product, the exemption from regulation of materials produced intrastate "tends to frustrate the federal interest in eliminating commercial transactions in the interstate market in their entirety." For the same reasons, § 2251(a) "is squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat . . . , marijuana [or child pornography], has a substantial effect on supply and demand in the national market for the commodity."

*Jeronimo-Bautista*, 425 F.3d at 1272-73 (internal citations omitted). Accordingly, we concluded that notwithstanding the *de minimis* character that an individual instance of home production of child pornography might have under the statute, even the purely local production of child pornography can curb the nationwide supply for such materials. *See id.* at 1273. Because a set of circumstances exist under which § 2251 would be valid, we hold that Mr. Grimmett's facial challenge must fail.

2. As-applied challenge

-19-

Finally, we consider Mr. Grimmett's challenge that § 2251 is unconstitutional as applied to him. Mr. Grimmett notes that "the district court found that there was no evidence that Mr. Grimmett distributed or intended to distribute the pornography." Aplt's Br. at 36. "That remote possibility that the pornography may one day, by someone, be distributed on the interstate market is the essence of attenuation," especially when coupled with a lack of intent. *Id.*

This argument is foreclosed by our conclusion above. "The fact that [Mr. Grimmett] neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment." *Holston*, 343 F.3d at 91. "Congress' decision to deem illegal [Mr. Grimmett's] local production of child pornography represents a rational determination that such local activities constitute an essential part of the interstate market for child pornography that is well within Congress' power to regulate." *Jeronimo-Bautista*, 425 F.3d at 1273. Because § 2251(a) is a legitimate exercise of Congress' power as applied to Mr. Grimmett's conduct, his challenge fails.

## III. CONCLUSION

According, we AFFIRM (1) the district court's denial of Mr. Grimmett's motion to suppress, and (2) its rejection of Mr. Grimmett's facial and as-applied challenges to § 2251.