FILED
                                                  United States Court of Appeals
                                                          Tenth Circuit

                                                     **November 16, 2009**
PUBLISH
                                                  **Elisabeth A. Shumaker**
                                                      **Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.                                                       No. 08-3269

COEN C. POTTS,

     Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**D.C. No. 07-CR-40071-JAR-1**

---

Stephen M. Joseph, Joseph & Hollander, PA, Wichita, KS, for the Appellant.

Christine E. Kenney, Assistant United States Attorney, (Marietta Parker, Acting United States Attorney, with her on the brief), District of Kansas, Topeka, Kansas, for the Appellee.

---

Before **HENRY,** Chief Judge**, HOLLOWAY** and **GORSUCH**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

     Defendant-appellant Coen Potts was indicted on two offenses:  receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  The indictment also sought forfeiture of defendant's computer and various related devices.  Mr. Potts moved to suppress all

evidence that had been seized during the execution of a search warrant at his apartment. The district court denied the motion in a published opinion. *United States v. Potts*, 559 F.Supp.2d 1162 (D. Kan. 2008).

Defendant Potts then entered a plea of guilty to both charges under an agreement that permitted him to appeal the denial of his motion to suppress. Mr. Potts was sentenced to 85 months' imprisonment, forfeiture of the specified property, a term of five years of supervised release, and was ordered to pay a special assessment of $200.00. He now brings this appeal, which is under the jurisdiction granted this court by 28 U.S.C. § 1291.

## I

### The Affidavit Supporting the
### Application for the Search Warrant

The investigation of defendant began on September 8, 2006, when a woman contacted FBI Special Agent Stacie Lane to report an encounter that she said had happened about ten months earlier.[1] The witness told Agent Lane that she had begun having telephone conversations with Coen Potts through a telephone dating service in October 2005. In their telephone conversations, he had told the witness that he lived in Topeka where he was employed teaching art to very young elementary school pupils.

---

[1]This initial summary presents the facts as they were reflected in Agent Lane's affidavit submitted to the federal magistrate judge to support the application for a search warrant for defendant's apartment. At the suppression hearing, counsel for defendant was successful in showing that the information given by the witness was incorrect in some details, which will be noted later in this opinion.

After several telephone conversations, the witness and Mr. Potts arranged to meet in Norman, Oklahoma, probably on October 29, 2005. During this meeting, apparently the only time the two met in person, Mr. Potts brought out a large notebook and began showing photos to the witness. After he had shown her some innocuous images, Mr. Potts showed the witness three photos that she quickly realized were child pornography. The witness had described two of the photos to Agent Lane but said that she had been so shocked by these photos that she could not remember the third image. The witness said that she got the impression that Mr. Potts frequently viewed child pornography on the internet and had downloaded the images he had shown her from the internet.

The witness told Agent Lane that she had only three subsequent telephone conversations with Mr. Potts. The witness told Agent Lane that in each of those three conversations she had brought up Potts's interest in child pornography to find out if he was still viewing it. Potts said that he had been doing it too long to stop.

In these conversations Mr. Potts said two things that upset the witness to the extent that she said that she ceased all contact with Potts. Both had to do with Mr. Potts's fantasies about having sexual contact with children. The witness said that the third and last call had occurred on November 17, 2005, after which she had no further contact with Mr. Potts until Agent Lane asked her to contact him again as part of the investigation.

Afterwards, Agent Lane's affidavit recited, the witness tried to put all of this out of her mind and forget it. In September 2006, however, a friend persuaded her to call law enforcement. The witness "broke down" when discussing the matter, according to Agent

-3-

Lane. She could not explain why she had delayed for ten months or so to report the matter, other than saying that it made her very uncomfortable to talk about it. Agent Lane's affidavit states that the witness "continued to break down whenever she discussed the comments Potts made concerning child exploitation" in subsequent telephone conversations.

Agent Lane began a limited investigation after her telephone interview with the witness. Agent Lane established that Mr. Potts had been employed at a certain school district in the Topeka area since 2002. Contact with the school superintendent confirmed that Potts was employed as an art teacher. Agent Lane also examined public records and determined that Potts was "associated with" apartment #125 on 4120 SW Twilight Drive in Topeka. Other than establishing these basic facts, the only other thing Agent Lane appears to have done to confirm the witness's account and to establish probable cause for a search of defendant's apartment was to arrange for the witness to make a recorded telephone call to defendant.

The witness recorded a telephone conversation she had with Potts on October 2, 2006. We quote the district court's description of the transcript of that conversation, which quotes liberally from the transcript itself:

> During this telephone conversation, defendant confirmed that he still worked as an art teacher and that he owns his own computer. Three significant exchanges occurred during this recorded conversation. First, the informant raised the issue of child pornography in a discreet way. Without specifically referencing children or child pornography, the informant said that "you sound like you're still into that . . . the whole . . ." and "like when we talked before—that's what you kinda' wanted, so I don't know, I was

-4-

just hoping you didn't." Defendant responded that "it's not like it's 24 hours a day or anything and in fact I really, uh, don't hit any of those sites, uh, anymore than, I mean I know where they are, but I don't revisit them very often" and "it costs money to get on the Net, that often . . . when you're downloading things that take hours to download."

> . . . .

> Third, defendant raised the fact that the informant wanted him to get help. The informant responded that "there's help out there for people that have addictions . . . or like things that are not normal" and "I'm not saying you're not normal, but you know what I mean." Defendant said that "I have admittedly . . . I've had a porn addiction in a way." When the informant asked "[d]o you think that's what led to *that*?", defendant responded "well no" and "it's just because I've been really by myself and really sort of unsuccessful with women virtually my whole life . . . ."

559 F.Supp.2d at 1166.[2]

**The Search Warrant**

The search warrant included an "Attachment B" with the heading "List of Items To Be Seized." Attachment B was a one-and-one-half page document with 13 paragraphs describing the objects of the search. Paragraph 1 listed all computer-related equipment, *inter alia*, that could be used to store visual depictions of child pornography, etc. Paragraph 2 covered "correspondence" pertaining to possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct . . . ." Each of the other 11 paragraphs also included specific language limiting the objects of the search to matters connected with child pornography.

---

[2]The emphasis on the word "that" appears in the affidavit. We are unsure of its origin; our record does not include the recorded conversation, nor have we found any explanation of the emphasis.

The warrant also included this provision: "The search shall be conducted in accordance with the search protocol outlined in the attached Addendum." Because of its importance in this case, we reproduce the Addendum in full (emphasis in the original):

ADDENDUM

The search procedure of the electronic data contained in computer equipment subject to the foregoing Search Warrant, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques:
(a) surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings identifying its contents and opening a drawer believed to contain pertinent files);
(b) "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;
(c) "scanning" storage areas to discover and possibly recover recently deleted data;
(d) scanning storage areas for deliberately hidden files; or
(e) performing "keyword" searches through all electronic storage areas to determine whether occurrences of language, symbols, or other data contained in such storage areas exist that are intimately related to the subject matter of the investigation.

**This Search Warrant and the above-described search procedure specifically excludes a search of any kind of unopened electronic mail.** No search of unopened electronic mail shall be conducted without a separate search warrant supported by probable cause. The examiner(s) will limit his/her search related to the criminal charges under investigation. Appropriate efforts shall be made to minimize the disclosure of records and other information that are not the subject of this Search Warrant. If files and/or information is found related to other criminal activity, then a separate warrant will immediately be sought to obtain that information.

**The Hearing on the Motion to Suppress Evidence**

Much of the testimony adduced from Agent Lane by the government at the

suppression hearing has been recited *supra* in our summary of Agent Lane's affidavit supporting the application for search warrant. The government also presented the testimony of Agent Jeffrey Owen, a computer forensic expert and the officer who conducted the search of defendant's computer, after an initial search by Agent Lane.

For purposes of this opinion, Sergeant Owen's testimony was significant in establishing that he used specialized software to search for files that might fit the descriptions included in Attachment B of the warrant. He explained how a program automatically finds and collects all images stored on the computer. These images have to be viewed by the examiner to determine the nature of the images. With text files, such as correspondence and other documents, Sergeant Owen testified that he used a "key word search" program that identified specific files as possibly within the search parameters. Most importantly, Sergeant Owen testified that use of the search software available to him made it unnecessary for him to actually open every file to determine its contents.

Defendant introduced a significant amount of new evidence at the hearing by cross-examination of Agent Lane and Sergeant Owen and through his own testimony. Much of defense counsel's cross-examination of Agent Lane focused on things that she had not done in her investigation before obtaining the search warrant, the significance of which we will discuss *infra*. She had not obtained phone records to verify that the witness and the defendant had spoken a number of times, nor had she verified their contacts by e-mail. Agent Lane had not verified the existence of the dating service the witness said had led to her introduction to the defendant, nor did she interview anyone

close to the witness.

Agent Lane's affidavit, in an earlier, technical section about computers generally, stated that "[a]nalysis of the IP address used by the person accessing the Internet is the reliable way to identify the user." But she did not attempt to do that with defendant's internet provider until *after* execution of the search warrant. She did not confirm that defendant had internet access at his home until after obtaining and executing the search warrant.

Agent Lane said that she had been concerned about the fact that the witness had not reported the events for almost eleven months (or more, if Mr. Potts's testimony was accurate). The agent said that because of this concern she interviewed the witness "quite diligently" and asked her to explain the reason for the delay. Agent Lane interviewed the witness several times and said that the witness often cried when discussing the matter. Agent Lane verified that the witness would be willing to testify. The witness agreed to make a recorded telephone call to the defendant, which required multiple attempts before the call could be completed. Agent Lane thought this extensive cooperation by the witness reflected positively on her credibility.

In his own testimony, defendant presented phone records showing that the number of contacts between him and the witness was much greater than the witness had said and that the communications had extended over a considerably longer period. Defendant testified that the only time he had been in Oklahoma had been when he met the witness, which he said had been in July 2004, more than a year before the witness had said that

she had met with him.[3]

## The District Court's Analysis and Ruling

The district judge rejected defendant's argument that probable cause was lacking because the information reflected in the affidavit supporting the application for the search warrant was stale. The judge noted that the question whether the information was stale depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."[4] The judge also noted that our court has recognized that collectors of child pornography are likely to "hoard" the materials.[5] The judge found that the recorded telephone call of October 2006, seventeen days before issuance of the warrant, indicated that defendant's interest in child pornography still existed.

As for the showing of probable cause that the evidence would be found in the apartment of Mr. Potts, direct evidence or personal knowledge that the contraband is located there is not required by our cases.[6] The magistrate judge reasonably inferred that defendant likely would have materials at his residence for security. Agent Lane knew that defendant owned a personal computer, and defendant had mentioned in the recorded telephone call that it can take hours to download some of the materials from the internet, which would not be feasible at the elementary schools where he was employed. Also,

---

[3]The district court made no findings regarding the discrepancies in the testimony.

[4]Quoting *United States v. Perrine*, 518 F.3d 1196, 1205-06 (10th Cir. 2008).

[5]Also quoting *Perrine*.

[6]*See United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997).

defendant had printed images that he displayed in a large notebook, and it was also reasonable to infer that he would not keep that at the schools where he was employed. The totality of this information was sufficient, the judge concluded, to support a common sense decision that evidence of the crimes charged likely would be found at the residence.

The district judge went on to opine that the search could be sustained on the alternative ground of the "good faith" exception to the exclusionary rule first articulated in *United States v. Leon*, 468 U.S. 897 (1984). *Leon* set out four instances in which its exception to the exclusionary rule would not be applicable, of which Mr. Potts had invoked only one, arguing that the affidavit was "so lacking in indicia of probable cause" that it would be unreasonable for the officer to rely on it. *See id.* at 923 (quoting *Brown v. Illinois,* 422 U.S. 590, 610-611 (1975) (Powell J., concurring in part)). Mr. Potts relied on the evidence he adduced at the hearing on his motion to suppress, evidence that tended to show that Agent Lane had failed to investigate the complaining witness's account in several respects.

The district judge found that Agent Lane had corroborated significant portions of the witness's account and had formed a reasonable opinion that the witness was credible based on her interviews with the witness and the level of cooperation the witness had displayed. Further corroboration was obtained in the recorded telephone call between the witness and Mr. Potts. The warrant contained sufficient indicia of probable cause, and Agent Lane had acted reasonably, the judge concluded.

The district judge also rejected Mr. Potts's challenge to the scope of the search

warrant. The challenge Mr. Potts made in his motion to suppress, which he also pursues in this appeal, was focused on the language in the Addendum to the search warrant, which we have quoted *supra*, authorizing the officers to open or cursorily read the first few pages of "such files" to determine their contents. The district judge concluded that the warrant "did not authorize the search and seizure of evidence for which there was no probable cause." 559 F.Supp.2d at 1176.

## II

## Probable Cause

Mr. Potts contends that the search warrant was not based on probable cause. His challenge has two distinct parts. We will first address his contentions that the investigating agent failed to establish probable cause that he was currently in possession of child pornography because the information provided to the agent was allegedly stale and the recorded telephone conversation between Mr. Potts and the complaining witness did not provide more up-to-date information to remedy the problem of staleness because the conversation was so ambiguous as to be without probative value for establishing probable cause. We will then examine Mr. Potts's argument that the agent failed to establish probable cause to believe that evidence of the alleged crimes would be found at his residence.

In reviewing the determination of the magistrate judge that probable cause had been established for the search warrant, we use a standard of "great deference" to ensure that the judge had a "substantial basis" for the determination of probable cause. *United*

*States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006). We remain mindful that the issuing judge's task "is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir. 1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

We conclude that the warrant was supported by an adequate showing of probable cause. Agent Lane's affidavit recited the information she had obtained from the complaining witness, information which was plausible on its face. Agent Lane investigated some of the details that the witness had reported, and her investigation verified what the witness had reported. Agent Lane did not investigate every part of the witness's account, but the law has never required an officer to conduct a perfect investigation.

Agent Lane's affidavit reflects that she questioned the witness about the delay in reporting her encounter with Mr. Potts. The witness offered only one explanation: that it was very difficult for her to discuss the matter. At this point in the affidavit, Agent Lane added her personal observation that the witness had become emotional each time she discussed Mr. Potts's most disturbing comments. The magistrate judge could have readily inferred, as we do, that Agent Lane had made a judgment that the witness seemed credible and that Agent Lane's evaluation was reasonable.

The information in the affidavit was not stale when measured under the standards

that we have endorsed in child pornography cases. As the district judge noted, we have endorsed the view that possessors of child pornography are likely to hoard their materials and maintain them for significant periods of time. *See United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005).

Moreover, the recorded phone call occurred just seventeen days before the warrant issued. Although the witness and Mr. Potts used vague and ambiguous terms during the conversation, there was sufficient indication that the conversation referred to child pornography and that his interest in it had endured. Thus, when Mr. Potts said in the recorded telephone conversation that he had admittedly "had a porn addiction in a way," the witness asked if he thought the porn addiction was "what led to *that*." We think the implication here clearly is that the subject under discussion was something different from pornography in general. Given the rest of the information in Agent Lane's affidavit, it was a reasonable inference that the reference was to child pornography and that Mr. Potts had admitted to the witness that he still had that interest. In sum, the affidavit as a whole made a sufficient showing of probable cause that Mr. Potts had committed the crimes of receipt of child pornography and possession of child pornography to support the warrant.

Mr. Potts's challenge goes further, however. He argues that the affidavit failed to establish probable cause to believe that there was a fair probability that evidence of the suspected crimes would be found in his residence. The fundamental requirement at issue here is that "a nexus must exist between suspected criminal activity and the place to be searched . . . ." *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009). Whether

-13-

a "sufficient nexus has been shown between a defendant's suspected criminal activity and his residence . . . necessarily depends upon the facts of each case." *Id.* at 1279. Among the factors that may be relevant are the type of crime involved; the opportunity for concealment of evidence; the nature of the evidence sought; and the reasonable inference that may be drawn as to where a person would be likely to keep that evidence. *Id.*

Applying these factors to the circumstances of this case, we hold that the magistrate judge had a substantial basis for determining probable cause to search the defendant's home had been shown. The affidavit had shown that Mr. Potts owned a computer and that he was employed as a teacher at two elementary schools. There was probable cause to believe that Mr. Potts had some child pornography that he kept in a large binder. There was probable cause to believe that Mr. Potts had obtained images of child pornography by downloading them from the internet, a process that he had said could take hours to complete. We have previously said (as noted *supra*) that those who acquire these materials are likely to hoard them for significant periods of time.[7] All of these factors weigh against the possibility that Mr. Potts might have kept the materials at his workplaces.

These facts provided sufficient nexus for the magistrate judge to issue the search warrant for Mr. Potts's residence. As the district court correctly noted, direct evidence that contraband is in the place to be searched is not required. *See United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). The affidavit, and the inferences that

---

[7]*United States v. Riccardi*, 405 F.3d at 861.

could reasonably be drawn from it, were sufficient to establish the reasonable probability that the Fourth Amendment requires.

### The Leon Exception

Mr. Potts contends that the warrant was overly broad because it authorized the officers to open every file in his computer. He asserts that this over breadth violated the particularity requirement of the Fourth Amendment.[8] Mr. Potts further argues that this alleged defect in the warrant was so obvious that the officers could not have relied on the warrant in objective good faith, so that the evidence could not properly have been held admissible under the *Leon* exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 896 (1984); *see also Massachusetts v. Sheppard*, 468 U.S. 981 (1984) (applying the *Leon* exception to a search under a warrant that did not particularly describe the items to be seized).

Because we conclude that the evidence was admissible under the *Leon* exception, we need not decide whether the warrant failed to satisfy the particularity requirement. Instead, we assume *arguendo* that the warrant fell short in this respect and proceed to the *Leon* analysis. We have previously taken this approach of assuming a deficiency without deciding the issue and applying *Leon*. *See United States v. Cook*, 854 F.2d 371, 372 (10th Cir. 1988) (assuming *arguendo* that the warrant failed to show probable cause and proceeding directly to *Leon* analysis). Under *Leon*, evidence "'should be suppressed only

---

[8]". . . and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

-15-

if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *United States v. Otero*, 563 F.3d 1127, 1133-34 (10th Cir. 2009) (quoting *Herring v. United States*, 129 S.Ct. 695, 701 (2009)).

The government has urged us in application of the *Leon* exception here to weigh, in favor of admission of the evidence, the fact that the search itself – as opposed to the authority to search granted by the warrant – was not overly broad.[9] The district court's rationale for its ruling on this point is not clear, but that court seems to have so weighed this factor.

We are convinced that proper execution of the warrant – an execution that, as in this case, limited the search to things for which probable cause had been shown – is a prerequisite for undertaking the *Leon* analysis. In *Leon* the Supreme Court said: "*Our discussion* of the deterrent effect of excluding evidence obtained in reasonable reliance on a subsequently invalidated warrant *assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable*

---

[9]Mr. Potts has not properly raised any objection to the scope of the actual search, only to the scope of the authority to search granted by the warrant. Counsel for Mr. Potts explicitly told the district court that he was not challenging the execution of the warrant. Aplt. Appx. 207, 210-11. Nor was any challenge to the execution of the warrant made in the briefs on appeal. At oral argument, counsel for Mr. Potts did state that the first search of the computer files by Agent Lane was overly broad. However, in light of the express waiver of this issue in the district court and the failure to raise it in the briefs, we do not consider this contention, which was raised for the first time at argument on appeal. Moreover, we have not found clear support for counsel's assertion in our review of the record.

*to believe were covered by the warrant.*" *Leon*, 468 U.S. at 918 n.19 (emphasis added).

Our early cases applying *Leon* noted this principle. In *United States v. Medlin*, 798 F.2d 407 (10th Cir. 1986), we assumed that the warrant failed to show probable cause, but held that the officers' reliance on the warrant was objectively reasonable under *Leon*. We then considered the appellant's separate argument that the actual search had substantially exceeded the scope of the warrant. We held that *Leon* was not applicable to this issue: "Medlin correctly notes that *Leon* does not apply to issues of improper execution of warrants." 798 F.2d at 410. We remanded the case for the district court to consider, in the first instance, whether property had been seized illegally and, if so, whether the officers' conduct was "so flagrant" as to require exclusion of all evidence seized. *Id*. at 411.

We later quoted the *Leon* footnote and the holding of *Medlin* in *United States v. Leary*, 846 F.2d 592, 607 n.27 (10th Cir. 1988). We continued to recognize that *Leon* would simply be inapplicable if the execution of the search warrant had been improper in *United States v. Moland*, 996 F.2d 259, 261 (10th Cir. 1993). A few years after that, we noted both *Medlin* and *Moland* again, *United States v. Rowland*, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998), while deciding that the execution of the warrant in *Rowland* had been proper.

Because the *Leon* exception cannot be applied when execution of the warrant was not limited to things for which probable cause to search had been shown, proper execution of an invalid warrant is a pre-condition: if the pre-condition exists, then the

-17-

court should apply the objective good faith test to the warrant, asking whether a reasonably trained officer could have believed that the search was authorized in spite of the defect in the warrant.

We adhere to our holding in *Medlin*. *Leon* does not apply if the execution of the warrant was improper. The proper execution of the warrant in the instant case permits the government to rely on *Leon* and argue for this court to affirm the denial of the motion to suppress, which we do.

Thus we proceed to consider the objective reasonableness exception of *Leon* to the exclusionary rule.[10] "[O]ur good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. This is a question of law that we review *de novo*. *United States v. Rowland*, 145 at 1206 (10th Cir. 1998). Of course some examination of the alleged defects in the warrant and of the Fourth Amendment's requirements is an essential part of the *Leon* analysis because we are instructed to consider "all of the circumstances," *Leon*, 468 U.S. at 922 n.23, and assume that the executing officers "have a reasonable knowledge of what the law prohibits," *id.* at 919-20 n.20.

---

[10]As the Court recently noted, the very name of the rule announced in *Leon* may have invited misunderstanding: "We (perhaps confusingly) called this objectively reasonable reliance 'good faith.'" *Herring*, 129 S.Ct. at 701. In our analysis, we strive to maintain our focus on the objective nature of the inquiry and to avoid slipping into consideration of subjective factors, a danger perhaps created by the misleading "good faith" label.

"The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings. It was adopted in response to the evils of general warrants – those that allow such exploratory rummaging." *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000) (internal quotations marks and citations omitted).

With respect to computer searches, we have held that the particularity requirement of the Fourth Amendment demands that "[o]fficers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001). At the same time, we have recognized that a computer search "may be as extensive as reasonably required to locate the items described in the warrant." *United States v. Grimmett*, 439 F.3d at 1270 (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982)). Moreover, we have adopted a "somewhat forgiving stance" in analyzing particularity challenges to search warrants involving computers. *Grimmett*, 439 F.3d at 1269.

Working within these generally phrased parameters, we begin with the specific language from the search warrant that Mr. Potts contends is so broad as to violate the Fourth Amendment's command. As we quoted *supra*, the Addendum sets out a procedure for searching the computer and related equipment by listing "techniques" that may be used. In its first subparagraph, the addendum refers to "surveying" file directories and individual files in language that appears to limit the "survey" to the names or labels

-19-

attached to directories and files. The second subparagraph, subparagraph (b), is the focus of defendant's challenge. In this section, the addendum states that the "techniques" allowed include "'opening' or cursorily reading the first few 'pages' of such files in order to determine their precise contents."

Although this language sweeps very broadly, the language should be read in context. The search warrant described the "items to be seized" in another discrete attachment, labeled Attachment B. Attachment B comprises 13 numbered paragraphs on one and one-half, single-spaced pages. Although the search warrant does not anywhere specify the federal statutes that Mr. Potts was suspected of having violated, as we have already noted, each of the 13 paragraphs of Attachment B refers to "child pornography," "sexual activity with children," "visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256," "sexual activity with minors," or similarly worded expressions. Moreover, the government also points to the second full paragraph of the Addendum (also quoted *supra*) where the officer executing the warrant is (ungrammatically) commanded to "limit his/her search related to the criminal charges under investigation." Although the charges are not specified, the language in Attachment B made it clear what kind of conduct was under investigation.

We conclude that a reasonable officer could have construed the warrant as limited by the multiple references to child pornography and related offenses that are present in Attachment B to the warrant. We do not think that such a reading is so strained as to be unreasonable. The warrant was not "so facially deficient . . . that the executing officers

cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

We reached a similar conclusion in *Otero*, in which officers were investigating theft of credit cards and other materials from the mails and had focused the investigation on a rural mail carrier. A search warrant was obtained for the suspect's residence, including her home computer. An attachment to the warrant described the objects of the search in two distinct sections, labeled "items to be seized" and "computer items to be seized." In the first section, the descriptions of the items were limited by references to the suspected crimes under investigation, as by reference to correspondence related to credit cards that was addressed to persons other than residents of the suspect's home, for example. But in the second section, describing "computer items to be seized," there were no references to limit the extremely broad descriptions, which included "all information and/or data stored" on the computer, for example.

After finding a Fourth Amendment violation in *Otero*, we analyzed the case under *Leon*. We held that a reasonable officer could have read the warrant as the government had suggested, *i.e.*, as applying the limitations in the first section of the attachment to the second section as well. We concluded that the officers "had reason to believe that the warrant was subject to limitations . . . ." Accordingly, we concluded that the officers' conduct was "not the kind of 'flagrant or deliberate violation of rights' that the exclusionary rule was meant to deter."[11]

Similarly in the instant case, we conclude that reasonable officers could have read

---

[11]563 F.3d at 1134 (internal citations omitted).

the warrant as restricting the search to materials connected to child pornography, even under our assumption that the warrant was not actually so restricted. It follows that the district judge properly denied the motion to suppress the evidence.

**Conclusion**

We hold that the search warrant was supported by probable cause to believe that Mr. Potts had committed the crimes of receipt of child pornography and possession of child pornography and that evidence of these crimes was reasonably likely to be found at his residence. We further hold that, assuming but not deciding that the search warrant failed to state with particularity the items to be searched on the computer and related devices in violation of the Fourth Amendment, the district court nevertheless properly denied Mr. Potts's motion to suppress the evidence seized under authority of the search warrant because a reasonably well trained officer could have believed that the search was legal. Accordingly the judgment is

AFFIRMED.