**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DOUGLAS RATHBUN,

     Plaintiff - Appellee

v.

BERNARD MONTOYA, Detective,
Denver Police Department, Metropolitan
Auto Theft Task Force, sued in his
individual capacity; JOHN M. LIETZ,
Detective, Denver Police Department,
Metropolitan Auto Theft Task Force, sued
in his individual capacity; DAVID
SCONCE, Sergeant, Denver Police
Department, Metropolitan Auto Theft Task
Force, sued in his individual capacity;
JAMES SEWALD, Officer, Denver Police
Department, sued in his individual
capacity,

     Defendants - Appellants,

and

ART PETERSON, Detective, Jefferson
County Sheriff's Office, Metropolitan Auto
Theft Task Force, sued in his individual
capacity; W.D. HOOVER, Sergeant,
Lakewood Police Department,
Metropolitan Auto Theft Task Force, sued
in his individual capacity; SEAN
TEMPLETON, Detective, Lakewood
Police Department, sued in his individual
capacity; OFFICER JOE OBECHINA,
Detective, Lakewood Police Department,
sued in his individual capacity; CHARLES
HEMMING, Detective, Wheat Ridge
Police Department, Metropolitan Auto

No. 14-1352
(D.C. No. 1:13-CV-03060-RPM)
(D. Colo.)

Theft Task Force, sued in his individual capacity; DELFINO RODRIGUEZ, Inspector, Denver Neighborhood Inspection Services, sued in his individual capacity; OFFICER MORETTI, Metropolitan Auto Theft Task Force, sued in his individual capacity; JOHN DOES 1-4, Metropolitan Auto Theft Task Force, sued in their individual capacities,

Defendants.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.
_____

This is an interlocutory appeal from the denial of a motion to dismiss asserting qualified immunity. Defendants-Appellants are law-enforcement officers who are members of the Metropolitan Auto Theft Task Force (M.A.T.T.), a multi-jurisdictional law-enforcement coalition in the Denver metropolitan area formed to combat automobile theft. On November 10, 2011, they executed a search warrant at Douglas Rathbun's business and seized five motor vehicles. Claiming the search warrant was invalid, Mr. Rathbun brought suit under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unreasonable searches and

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

seizures.  He sued all of the officers in their individual capacities for money damages.[1]  The officers filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) invoking qualified immunity.  The district court denied the motion and the officers appeal.  We have jurisdiction under 28 U.S.C. § 1291 over this final collateral order denying the motion to dismiss on qualified-immunity grounds.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (holding appellate courts have jurisdiction over the district courts' orders rejecting as a matter of law qualified immunity raised in a motion to dismiss).  We reverse.

## I.     **Background**[2]

Mr. Rathbun owns and operates an auto-body repair and customization business located in the City and County of Denver, Colorado.  Defendant Lietz, a detective with the Denver Police Department, prepared an affidavit in support of a search-warrant application.  The affidavit accompanied the application and was

---

[1]     All but four of the defendants have been dismissed from this lawsuit. The remaining defendants are appellants Montoya, Lietz, Sconce, and Sewald.

[2]     Facts are taken from Mr. Rathbun's amended complaint.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) (stating that when reviewing a district court's denial of a motion to dismiss based on qualified immunity, "all well-pleaded factual allegations in the complaint are accepted as true." (ellipsis and internal quotation marks omitted)).  In addition, we draw facts from the search warrant and the affidavit in support of the search warrant, both of which are referenced in the amended complaint.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference," as well as "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (citations and internal quotation marks omitted)).

3

expressly incorporated into the search warrant. The affidavit described Detective Lietz's extensive law-enforcement experience, including over 30 years as a police officer, 18 of which were as a detective, and his emphasis on automobile thefts. The affidavit also related that he had received a tip from Christina Lane, who said she was Mr. Rathbun's former wife. Ms. Lane reported that Mr. Rathbun was storing stolen vehicles at his business, cooking and smoking methamphetamine, having sex with young girls, and videotaping sexual activity. A confidential informant stated that Mr. Rathbun kept drugs on the top of the rolling garage door so they could not be seen when the door was open.

Detective Lietz also included the following information in his affidavit: He had received information from other law-enforcement officers that several vehicles were stored in a lot adjacent to Mr. Rathbun's business. Sergeant Sconce reported that there was a vehicle parked at the business that had a license plate for which there was no official registration. Officer Lynch reported that an arrestee had informed the authorities that she received a fictitious temporary vehicle permit from Mr. Rathbun, who made phony permits to be used with stolen vehicles and had done so for many years. Officer Lynch further advised that Mr. Rathbun was associated with numerous stolen vehicle arrests she had made in the last few years.

In addition, upon checking police records, Detective Lietz learned that Mr. Rathbun's "name came up in numerous stolen vehicle arrests," Aplt. App. at 121, and earlier that year, he had been arrested in a stolen truck while in possession of methamphetamine. Detective Lietz also conducted video surveillance of

4

Mr. Rathbun's business premises. He observed that there were vehicle parts on the building roof, including several bumpers. On October 20, 2011, the video camera showed a black Blazer towing a small flatbed trailer to the business. The trailer's license plate was for a camper, not a flatbed trailer, suggesting a misuse of license plates or theft of the trailer. The video camera revealed that during the night of October 29, 2011, an RV trailer was towed onto the business premises. The next day, Mr. Rathbun was observed replacing the glass in the door and carrying items from the RV trailer into his building. A day later, Detective Lietz was able to determine that the RV trailer had been reported stolen on September 27, 2011. Officers went to the business to recover the RV trailer. While there, officers knocked on the door and looked in the windows, but it appeared that no one was present. After the officers departed, the garage door opened and several people left the business.

Detective Lietz's affidavit indicates that the warrant application was approved by a Denver deputy district attorney before it was submitted to a judge. A Denver judge acting as a neutral magistrate then authorized the search warrant on November 4, 2011. The search warrant described the property to be searched for and seized as follows:

> Any vehicle or vehicle part that may be reported as, or appear to be, stolen, have tampered or altered: Ignition switch, VIN or serial numbers, plates, stickers, license plates or any altered, or other, ownership documentation.

> Any items that may be removed from other motor vehicles such as cameras, cell phones, wallets, purses, laptop computers, check books, credit cards, etc.

Any Ownership documents or any paperwork to assist with identification of owners of above parts/vehicles.

Any tools used to start, steal, tamper or alter, or disassemble motor vehicles or alter or change VINs or VIN plates including but not limited to: die stamps, rivet and rivet guns, VIN plate blanks, license plates of any kind, "jiggler keys," lock picking tools, slide hammers, "dremmel" tools, etc.

All types of computers, tablets, scanner/printers, video or digital cameras, cell phones, and digital or magnetic storage of any kind that could be used to record or store video, audio or still photos.

Controlled substances (including but not limited to coca leaves, coca leaf derivatives, stimulants, opium derivatives, depressant drugs, hallucinogenic drugs, tranquillizers), methamphetamine, amphetamine and marijuana and marijuana concentrate all as defined in Colorado Revised Statutes 18-18-102, as amended, together with such vessels, implements and furniture used in connection with the manufacture, production, storage, sale, distribution or dispensing of such substances.

Aplt. App. at 116.

The M.A.T.T. team executed the warrant on November 10, 2011. The team seized five vehicles and arrested Mr. Rathbun.[3] Mr. Rathbun was released from custody later that day and no charges were filed against him.

## II. Procedural History

Mr. Rathbun sued, claiming the officers violated his constitutional rights by failing to investigate Ms. Lane's credibility and basing the search-warrant affidavit on her information which was not credible, and by conducting an unconstitutional

---

[3]    The M.A.T.T. team had a warrant to arrest Mr. Rathbun. Although his complaint alleged that he was arrested without probable cause or a warrant, he subsequently conceded that his arrest was lawful, thus abandoning this claim.

6

search of his property and seizing vehicles he lawfully possessed.  The officers moved to dismiss, asserting they were entitled to qualified immunity.[4]

In response to the officers' motion to dismiss, Mr. Rathbun contended that the search warrant was a prohibited general warrant that failed to state with particularity the items to be seized and authorized the officers to seize virtually any vehicle.  *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (stating that a general warrant is one that authorizes a "general, exploratory rummaging in a person's belongings").  The district court, without providing any analysis, held that the warrant was facially invalid and "[a]ny reasonably-trained police officer would know that it authorize[d] an unreasonable search and seizure in violation of the Fourth Amendment."  Aplt. App. at 247.  The officers appeal, arguing that the district court erred in denying their motion to dismiss because they are entitled to qualified immunity.

## III.  Preliminary Issues

The officers argue that since Mr. Rathbun's particularity argument was not included in the amended complaint, it is not properly before the court.  The district court observed that the search warrant was attached to the amended complaint and held that an amendment to the complaint was not required "to add to the legal argument that [the warrant] is invalid because that's part of the complaint."  Dist. Ct. Dkt. #103, at 13.  The court may consider an additional legal theory asserted in

---

[4]    The officers also asserted that the amended complaint failed to specifically allege the personal involvement of each defendant, instead relying on collective allegations against all defendants.  Given our conclusion that the defendants are entitled to qualified immunity, we need not address this argument.

response to a motion to dismiss if it is "consistent with the facts and theories advanced in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001). We conclude that Mr. Rathbun's "general warrant" theory was consistent with the facts and theories raised in the amended complaint and the district court properly considered it.

The district court dismissed Mr. Rathbun's claims that were based on the alleged material misrepresentations of an incredible informant. Because Mr. Rathbun has not filed a cross appeal from this ruling, it is not before us. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 n.2 (10th Cir. 2004) (declining to consider issues the district court decided in favor of the appellant, but not cross-appealed by the appellee).

## IV.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks omitted). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in

8

light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (brackets and internal quotation marks omitted). "[Q]ualified immunity is an *immunity from suit* rather than a mere defense to liability. [I]t is effectively lost if a case is erroneously permitted to go to trial." *Brown v. Montoya*, 662 F.3d 1152, 1161 (10th Cir. 2011) (ellipsis and internal quotation marks omitted). "This Court reviews *de novo* the district court's decision on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity." *Denver Justice & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 927 (10th Cir. 2005). Similarly, "[t]his court reviews de novo whether the warrant at issue is sufficiently particular." *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011) (internal quotation marks omitted).

## V.     Particularity Requirement

The Fourth Amendment requires not only that warrants be supported by probable cause, but that they "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) (internal quotation marks omitted). "Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *Cooper*, 654 F.3d at 1126 (internal quotation marks omitted). Moreover, "the warrant may cross-referenc[e] other documents, such as an affidavit" in

9

support of the application, "to satisfy the particularity requirement." *Id.* (citation omitted).

## VI.    Discussion

The officers challenge the district court's denial of qualified immunity based on the court's view that the warrant was a general warrant. We need not decide whether the search warrant met the Fourth Amendment's particularity requirement because we conclude that the officers "are entitled to immunity from damages, even assuming that the warrant should not have been issued," *Messerschmidt*, 132 S. Ct. at 1244. As noted, a neutral magistrate issued the search warrant for Mr. Rathbun's property. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Id.* at 1245 (quoting *United States Leon*, 468 U.S. 897, 922-23 (1984)).

Issuance by a neutral magistrate, however, "does not end the inquiry into objective reasonableness. Rather [the Court has] recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). But "the threshold for establishing this exception is a high one," because a police officer ordinarily "cannot be expected to question the magistrate's [particularity] determination [given that] it is the magistrate's responsibility to determine whether the [warrant is sufficiently particular] and, if so, to issue a warrant

10

comporting in form with the requirements of the Fourth Amendment." *Id.* (brackets and internal quotation marks omitted).

Mr. Rathbun contends that the warrant's broad language authorizing the officers to seize any vehicle that appeared to be stolen could apply to any vehicle at all. Likewise, he argues that the warrant's language authorizing a search for and seizure of any items that may be removed from a vehicle, such as cameras and wallets, could apply to any such item. Thus, he argues that no reasonably competent officer would have concluded that the warrant met the particularity requirement.

As set forth above, the affidavit in support of the search warrant indicated that Mr. Rathbun's business and adjoining lot were being used to receive and store stolen vehicles, and that items from the stolen vehicles were taken into the building. Under these circumstances, even if the scope of the warrant were overbroad in authorizing a search for vehicles and other items not specifically described, it would not have been unreasonable for an officer to conclude that the warrant authorized them to search for and seize stolen vehicles. The officers could reasonably have concluded that the warrant was sufficiently particular, even though it described the items to be seized in broad or generic terms, given the nature of the crimes under investigation. *See Cooper*, 654 F.3d at 1127 (stating "whether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated," and holding that "[w]arrants relating to more complex and far-reaching criminal schemes may be deemed legally sufficient even though they are less particular than warrants pertaining to more straightforward criminal matters"); *United States v. Shoffner*,

11

826 F.2d 619, 631 (7th Cir. 1987) (holding that a specific description of vehicles to be seized was not required in a "continuing criminal scheme involving stolen automobiles"); *cf. Messerschmidt*, 132 S. Ct. at 1246 (holding that "[e]ven if the scope of the warrant were overbroad in authorizing a search for all guns when there was information only about a specific one," under the circumstances, "it would not have been unreasonable for an officer to conclude that there was a fair probability that the [described gun] was not the only firearm [the accused] owned" (internal quotation marks omitted)).

In addition, it would be objectively reasonable for an officer to assume that stolen vehicles would be moved in and out of Mr. Rathbun's property fairly quickly, and that a stolen vehicle could be processed through his business before it was reported stolen and made part of a search-warrant request. *Cf. New York v. Burger*, 482 U.S. 691, 710 (1987) (addressing administrative inspections, noting that "stolen cars and parts often pass quickly through an automobile junkyard"). Therefore, it was not unreasonable for the officers to assume that the search warrant met the Fourth Amendment's particularity requirement.

Mr. Rathbun also challenges as overbroad the search warrant's authorization to search for and seize computers, cameras, cell phones, digital or magnetic storage devices, controlled substances, and drug implements. Detective Lietz's affidavit included a report that an arrestee had received a fictitious temporary vehicle permit from Mr. Rathbun and that he made counterfeit permits for stolen vehicles. Further, a confidential informant had reported that Mr. Rathbun concealed drugs on top of the

12

rolling garage door at his business. Ms. Lane provided Detective Lietz with the following information: (1) she had seen Mr. Rathbun cooking methamphetamine on the premises and using it with his employees and others, (2) she had seen photographs of Mr. Rathbun having sex with a teenaged girl, (3) Mr. Rathbun produced temporary permits to put on vehicles located at his business; (4) she had been to the premises within three weeks of her report to police and nothing had changed from previous visits, and (5) Mr. Rathbun lived at the business so his belongings, including the drugs, photos, videos, and computers containing scans of counterfeit temporary vehicle permits, would be kept there.

The affidavit in support of the search warrant described several illegal activities, such as creating counterfeit documents for stolen vehicles and taking sexually explicit photos of underage girls, for which evidence is likely to be found in computers, cameras, cell phones, and digital or magnetic storage devices. Similarly, the affidavit alleged that Mr. Rathbun was cooking, storing, and using methamphetamine and providing it to his employees. Therefore, even if the scope of the warrant were overbroad in authorizing a search for controlled substances and any types of computers or other electronic equipment that could be used to record or store images, it would not have been unreasonable for an officer to conclude that the warrant authorized them to search for and seize those items. *Cf. United States v. Potts*, 586 F.3d 823, 833 (10th Cir. 2009) ("[W]e have recognized that a computer search may be as extensive as reasonably required to locate the items described in the warrant." (internal quotation marks omitted)); *United States v. Janus Indus.*, 48 F.3d

1548, 1554 (10th Cir. 1995) ("The type of criminal activity under investigation in the present case—a drug paraphernalia business—makes it difficult to list with great particularity the precise items desired to be seized which evidence such activity.").

Moreover, the affidavit reflects that Detective Lietz sought and obtained approval of the warrant application from a deputy district attorney before submitting it to the magistrate. This "provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was [not overbroad]." *Messerschmidt*, 132 S. Ct. at 1249.

## VII. Conclusion

The issue is not whether the magistrate erred in believing the search warrant he issued met the Fourth Amendment's particularity requirement, but instead whether the magistrate "so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt*, 132 S. Ct. at 1250. We conclude that the warrant in this case "was not so obviously lacking in [particularity] that the officers can be considered plainly incompetent for concluding otherwise." *Id.* (internal quotation marks omitted). "Indeed, a contrary conclusion would mean not only that [the officers] were plainly incompetent, but that . . . the deputy district attorney[] and the magistrate were as well." *Id.* at 1249 (citation and internal quotation marks omitted). The district court's order denying the officers qualified immunity is reversed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

14